# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Southern Division*

MICHAEL WIGGINS      *

    **Plaintiff,**      *

**v.**      *      **Case No.: GJH-18-1363**

WEXFORD HEALTH      *
SOURCES, INC., et al.,
     *

    **Defendants.**
     *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

*Pro se* plaintiff Michael Wiggins ("Plaintiff"), who is incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, brings this civil action under 42 U.S.C. § 1983 against Wexford Health Sources, Inc.[1] ("Wexford"), Holly Pierce, RNP ("Pierce") and Jane/John Doe.[2] ECF No. 1. Plaintiff alleges that Defendants have refused to provide him necessary pain medications and have thereby violated his rights under the Eighth Amendment. A hearing is not necessary. *See* Local Rule 105.6 (D. Md.). For the reasons that follow, Plaintiff's request for discovery will be denied, and Defendants' Motion to Dismiss, or Alternatively, for Summary Judgment, will be construed as a motion for summary judgment and granted.

### I.      BACKGROUND

In a Complaint filed on May 7, 2018, Plaintiff states that he suffers from several medical conditions, including sarcoidosis, depressive disorder, post-traumatic stress disorder, asthma, and

---

[1] The Clerk shall amend the docket to reflect the correct name of Defendant Wexford Health Sources, Inc.
[2] Defendant Jane/John Doe, whom Plaintiff described as a Wexford employee assigned to provide medical care for him, ECF No. 1 at 2, was neither identified nor served and therefore, shall be dismissed without prejudice. Even if service was effectuated on this Defendant, however, Plaintiff's claims would fail, as explained herein.

1

back pain. ECF No. 1 at 3.[3] He asserts that since November 2017, Defendant Pierce, whom he asserts is employed by Defendant Wexford and is assigned to provide medical care for Plaintiff at NBCI, has failed to provide him with prescribed pain medication, causing him to experience "tremendous pain and massive weight loss." *Id.* at 2–3. Plaintiff states that according to Pierce, the discontinuation of narcotic pain medication that he was previously given stems from a policy instituted by Wexford. *Id.* at 3.

Plaintiff claims that on April 3, 2018, he was transferred to Bon Secours Hospital in Baltimore, Maryland to see a Dr. Abdi for treatment for his sarcoidosis. *Id.* Due to a scheduling error, Plaintiff was unable to see Dr. Abdi until April 5, 2018. *Id.* at 4. Plaintiff alleges that after performing a procedure, Dr. Abdi prescribed the medications magnesium oxide, budesonide, and Imodium. *Id.*

Plaintiff states that on April 6, 2018, he was taken to Western Correctional Institution ("WCI") for a 24-hour mandatory observation. *Id.* After the medical staff took his vitals, however, he was returned to his cell at NBCI without the newly prescribed medications from Dr. Abdi or any pain medications. *Id.* Plaintiff claims that he waited two weeks for a follow up and was seen on April 17, 2018, after he filed sick call slips. *Id.* He alleges that the medical provider during that visit assured him that Pierce would be asked to order his pain medication. *Id.*

On April 22, 2018, having not received pain medication, Plaintiff states that he spoke to "RN Chrissy," who allegedly informed him that Pierce "declined to fill the order." *Id.* at 4–5. As of April 23, 2018, Plaintiff claimed that he still had not received the medication, leaving him "in pain and unable to properly eat solid meals causing rapid weight loss." *Id.* at 5.

Plaintiff alleges that Defendants' conduct constitutes a denial of his Eighth Amendment

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

right to be free from cruel and unusual punishment in that Defendants acted with deliberate indifference to his serious medical need. *Id.* at 6. He seeks declaratory and injunctive relief, as well as compensatory and punitive damages. *Id.* at 6–7.

Given the serious matters raised in Plaintiff's Complaint, the Court on May 14, 2018 directed counsel for Defendants and the Maryland Department of Public Safety and Correctional Services to show cause why relief should not be granted. ECF No. 2. Counsel for Defendants filed a response to this Court's Order to Show Cause on June 4, 2018 and attached supporting medical records.[4] ECF No. 5. On September 7, 2018, Defendants Wexford and Pierce filed a Motion to Dismiss, or Alternatively, for Summary Judgment. ECF No. 12.

Defendants do not dispute that Plaintiff suffers from several medical conditions for which he has been given pain medication. ECF No. 12-1 at 3. According to medical records attached to Defendants' motion, Plaintiff was receiving the medications Tramadol and Neurontin for his pain complaints in 2017. ECF No. 12-3 at 7, 10. In August 2017, Plaintiff began to experience abdominal pain, and a consultation with a gastroenterologist was subsequently approved. *Id.* at 21, 26.

By letter dated September 26, 2017, Mahboob Ashraf, M.D. informed Plaintiff that his "dose of Neurontin was written as 400mg po twice but pharmacy wrote to give you approved for tapering by 200mg per day." *Id.* at 36. According to Asresahegn Getachew, M.D., acting Medical Director at WCI and NBCI, Neurontin was prescribed for Plaintiff for pain complaints related to a gunshot wound, but had since been deemed "no longer medically necessary." ECF No. 12-5 ¶ 5. By October 9, 2017, an order for a tapering dose of Tramadol was also entered.

---

[4] Although the medical records attached to the response to the Show Cause Order did not include certification by the relevant custodian of records, Defendants later submitted verified medical records as exhibits to their Motion to Dismiss, or Alternatively, for Summary Judgment. *See* ECF No. 12-3. Throughout this memorandum opinion, the Court will rely on the verified records.

ECF No. 12-3 at 40.

On November 13, 2017, Plaintiff was seen at the NBCI medical unit complaining that he needed his prescription for pain medication renewed and that Ibuprofen he had received was hurting his stomach. *Id.* at 51. Plaintiff was educated on the use of Tramadol and was informed that its use for long term chronic pain is "not indicated." *Id.* Nonetheless, Plaintiff's prescription for Tramadol was reinstated on November 17, 2017, with a stop date of March 17, 2018. *Id.* at 53–54. That same day, it was noted that Dr. Abdi had diagnosed Plaintiff with colitis. *See id.*

On March 8, 2018, Plaintiff's prescription for Tramadol was extended again, this time through April 8, 2018. *Id.* at 91. As part of his continued gastroenterological care and treatment, on April 5, 2018, Plaintiff underwent a colonoscopy and endoscopic gastroduodenoscopy. ECF No. 12-7 at 22–23, 27–28. Following those procedures, Plaintiff was given new prescriptions for the medications Budesonide and Magox 400, as well as a continuing prescription for Imodium A-d. *See* ECF No. 12-3 at 99.

Defendants acknowledge that following the procedures, Plaintiff was returned to NBCI and that "there was some miscommunication regarding his medications so that he was unable to obtain them for approximately 10 days." ECF No. 12-1 at 6; *see* ECF No. 12-5 at 3. The provider who saw Plaintiff on April 17, 2018 noted that the "medication was ordered through pharmacy was [sic] faxed this afternoon." ECF No. 12-3 at 99. The provider also noted Plaintiff's weight as 173 pounds. *Id.* at 101. On May 1, 2018, Defendant Pierce examined Plaintiff and noted that he was receiving Tramadol and Imodium A-d through July 1, 2018, and Uceris through June 19, 2018. *Id.* at 103–04.

On May 2, 2018, Plaintiff saw an orthopedic specialist via "telemed." *Id.* at 105. The orthopedist opined that Plaintiff's chronic pain in his right lower leg and left upper arm resulted

from metallic hardware that was placed following Plaintiff's gunshot wound. *Id.* The orthopedist recommended removing the hardware to alleviate the pain and requested a consultation. *Id.* Plaintiff eventually underwent surgery to remove the hardware on June 5, 2018 at Bon Secours Hospital. *See* ECF No. 12-6.

As of May 16, 2018, Plaintiff had orders for Uceris through June 19, 2018, Tramadol through July 1, 2018, and Imodium A-d through September 12, 2018. ECF No. 12-3 at 111. During a May 16, 2018 medical visit, Plaintiff was noted to be 74 inches tall and weighing 175.2 pounds with a body mass index of 22.49. *Id.* By comparison, on March 23, 2018, prior to the gastrointestinal procedures, he was 74 inches tall, 176.6 pounds, with a body mass index of 22.67. *Id.* at 94–95.

Following Defendants' motion, Plaintiff filed a response in opposition on April 29, 2019, ECF No. 19, to which Defendants replied on May 7, 2019, ECF No. 20. Plaintiff then filed a Motion to Appoint Counsel on May 31, 2019, ECF No. 21, and an affidavit on June 14, 2019 pursuant to Federal Rule of Civil Procedure 56(d) asking the Court to defer considering Defendants' motion and to appoint for Plaintiff "an attorney to obtain a medical expert to review the Defendant's discovery." ECF No. 22 at 2. The Court denied the Motion to Appoint Counsel on July 15, 2019. ECF No. 25.

## II.  STANDARD OF REVIEW

Defendants' motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, pursuant to Rule 12(d), a court, in its discretion, may consider matters outside of the pleadings. If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Hous., LLC v. City of Salisbury*, 672 F. App'x. 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. Guiding considerations include whether extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165–67.

In general, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011); *see Putney v. Likin*, 656 F. App'x. 632, 638 (4th Cir. 2016);

*McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)) explaining why, "for specified reasons, it cannot present facts essential to justify its opposition" without needed discovery, Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244–45 (discussing the affidavit requirement of former Rule 56(f)). "Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery." *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. United Parcel Serv., Inc.*, No. DKC 08-2586, 2011 WL 665321, at *20 (D. Md. Feb. 14, 2011), *vacated on other grounds by Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338 (2015)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (quoting *Young*, No. DKC 08-2586, 2011 WL 556321, at *20)). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Gordon v. CIGNA Corp.*, 890 F.3d 463, 478 (4th Cir.

2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008). On the other hand, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

The claims that Plaintiff raises in his Complaint concern an allegation that Defendants have been deliberately indifferent to his serious medical needs by denying him necessary medication. In his affidavit filed pursuant to Rule 56(d), Plaintiff asks only that the Court defer consideration of Defendants' Motion and appoint him counsel, who in turn can obtain a medical expert to review the 111-page medical record provided by Defendants along with their Motion. Plaintiff does not adequately describe evidence relevant to the claims asserted that might be gleaned from his discovery request, nor does he seek information possessed only by Defendants. *Cf. Pisano*, 743 F.3d at 931. His request pursuant to Rule 56(d) will therefore be denied, and the Court will proceed to address Defendants' Motion as one for summary judgment.

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides in part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that simply any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002); *see Roland v. U.S. Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). Submissions by *pro se* plaintiffs must be liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But the court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## III.   DISCUSSION

Defendants Wexford and Pierce seek dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6), or summary judgment under Rule 56. ECF No. 12. In support, the Defendants argue that: (1) Plaintiff fails to state a valid Eighth Amendment claim; (2) Defendants were not deliberately indifferent to a serious medical need; (3) Defendant Wexford must be dismissed because there is no *respondeat superior* liability under § 1983; and (4) Defendants are protected by qualified immunity. ECF No. 12-1.

Plaintiff's claims, brought pursuant to 42 U.S.C. § 1983, all sound in deprivation of his right to be free from cruel and unusual punishment pursuant to the Eighth Amendment to the U.S. Constitution. To sustain an Eighth Amendment claim based on denial of medical care, an incarcerated plaintiff must demonstrate that the defendants' acts or omissions amounted to

deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106

(1976). Meeting that standard requires proof that, objectively, the prisoner was suffering from a

serious medical need and that, subjectively, the prison staff had actual knowledge of the risk of

harm to the prisoner but disregarded it. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Under the objective prong of the test, the medical condition at issue must be serious.

*Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it "has either

'been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay

person would easily recognize the necessity for a doctor's attention.'" *Scinto v. Stansberry*, 841

F.3d 219, 225 (4th Cir. 2016) (quoting *Iko*, 535 F.3d at 241).

The subjective component of the test requires "subjective recklessness" in the face of the

serious medical condition. *See Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994). "True

subjective recklessness requires knowledge both of the general risk, and also that the conduct [of

the responsible officials] is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340

n.2 (4th Cir. 1997); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "[I]t is not

enough that an official should have known of a risk; he or she must have had actual subjective

knowledge of both the inmate's serious medical condition and the excessive risk posed by the

official's action or inaction." *Jackson*, 775 F.3d at 178. "[M]any acts or omissions that would

constitute medical malpractice will not rise to the level of deliberate indifference." *Id.*

"Deliberate indifference is 'more than mere negligence,' but 'less than acts or omissions [done]

for the very purpose of causing harm or with knowledge that harm will result." *Scinto*, 841 F.3d

at 225 (alteration in original) (quoting *Farmer*, 511 U.S. at 835).

If the requisite subjective knowledge is established, an official may avoid liability "if [he]

responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S.

at 844. Under this standard, a mere disagreement between an inmate and a physician over the appropriate level or type of medical care does not establish an Eighth Amendment violation absent exceptional circumstances. *Scinto*, 841 F.3d at 225 (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)).

Plaintiff's claim centers on Defendants' alleged failure to provide pain medication as well as the medication prescribed by Dr. Abdi following Plaintiff's gastrointestinal procedures. Plaintiff states that, as a result, he suffered from constant pain, leading to massive weight loss. *See* ECF No. 1 at 3–5.

The record demonstrates that Plaintiff has been routinely seen and treated by the medical staff at NBCI to address his chronic health issues since 2017. From June 21, 2017 until May 16, 2018, Plaintiff was seen at least 48 times, including scheduled visits and sick calls. *See generally* ECF No. 12-3. In addition, Plaintiff was sent for offsite examinations and procedures by gastrointestinal and orthopedic specialists. *See generally* ECF Nos. 12-6, 12-7.

Plaintiff alleges that he stopped receiving pain medication in November 2017; however, his medical records indicate that he was receiving Tramadol, albeit on an acute rather than chronic basis, through July 1, 2018. ECF No. 12-4 at 15; ECF No. 12-5 ¶ 8. Plaintiff does not dispute that he was receiving Tramadol in his response to Defendants' motion. To the extent that his Complaint concerns the tapering and eventual cancellation of his prescription for Neurontin, Dr. Getachew, the acting Medical Director, explained in an affidavit that Neurontin was initially prescribed for pain related to Plaintiff's gunshot wound but that it was later deemed "no longer medically necessary." ECF No. 12-5 ¶ 5. Dr. Getachew further explained that Neurontin is primarily an anti-seizure medication and "has a very low indication for the mild nerve pain of which Plaintiff was complaining." *Id.*

With regard to the delay in receiving the medication prescribed by Dr. Abdi in early April 2018, the Court cannot find that the period during which Plaintiff did not have the medication exposed him to a serious or significant injury. *See Scinto*, 841 F.3d at 225. "[D]elay in providing treatment does not violate the Eighth Amendment where the seriousness of the injury is not apparent." *Brown v. Comm'r of Cecil Cty. Jail*, 501 F. Supp. 1124, 1126 (D. Md. 1980). Indeed, the record demonstrates that when Plaintiff arrived in the medical unit on April 17, 2018, he had a steady gait, was able to get on and off the table without difficulty, and had non-labored breathing. ECF No. 12-3 at 99. At that time, he weighed 173 pounds. *Id.* at 101. While that is 3.6 pounds less than his weight on March 23, 2018 prior to the gastrointestinal procedures, it is not indicative of the "massive" weight loss that Plaintiff alleges. *Id.* at 95. Plaintiff therefore struggles to meet the objective prong of the deliberate indifference analysis.

Even if Plaintiff's medical needs could meet the objective standard, his claim must fail on the subjective prong. Nothing in the record suggests that the officials responsible for Plaintiffs' care "kn[ew] of and disregard[ed] an excessive risk to [his] health or safety" in changing his pain medications. *Scinto*, 841 F.3d at 225 (alterations in original) (quoting *Farmer*, 511 U.S. at 837). An Eighth Amendment claim is not presented where, as here, the plaintiff alleges that defendants have not provided the exact medication that he desires. As previously noted, "'[d]isagreements between an inmate and a physician over the inmate's proper medical care' are not actionable absent exceptional circumstances." *Id.* (quoting *Wright*, 766 F.2d at 841).

In this case, Plaintiff has alleged no exceptional circumstances. Instead, the record reflects that his numerous medical conditions have been closely monitored by Defendants. As previously stated, in a span of 11 months, Plaintiff was seen in the NBCI medical unit at least 48 times for chronic care appointments and sick call visits. During that time, the medical staff

routinely evaluated Plaintiff's medication and surgical options and took his preferences into account in working to address his pain and other symptoms. *See, e.g.*, ECF No. 12-5 ¶ 6 ("I saw the Plaintiff on May 2, 2018 and agreed to continue providing narcotic medication until an alternative pain medication regimen could be developed.").

Nor does the delay in Plaintiff receiving his gastrointestinal medication indicate acts or omissions that rise to the level necessary for deliberate indifference. The record demonstrates that the medical staff at NBCI attended to Plaintiff's complaints when it was determined that his prescriptions were not ordered as intended. *See id.* ¶ 7; ECF No. 12-3 at 104; ECF No. 12-8 ¶ 5.

On these facts, viewed in the light most favorable to Plaintiff, there can be no genuine dispute that Defendants were not deliberately indifferent to a serious medical need. Summary judgment will therefore be granted in Defendants' favor.[5]

## IV.    CONCLUSION

For the foregoing reasons, Defendant Jane/John Doe will be dismissed without prejudice and summary judgment will be granted in favor of Defendants Wexford and Pierce. A separate Order follows.

Date: September    27, 2019                              ____/s/_____

                                                         GEORGE J. HAZEL
                                                         United States District Judge

---

[5] In light of the Court's ruling, it is not necessary to address Defendants' remaining arguments.